FLINTKOTE COMPANY, Glens Falls
Division, Plaintiff,

v.

W. Michael BLUMENTHAL, Secretary of
the Treasurey, Robert E. Chasen, Com-
missioner of Customs, W. Richard Nys-
trom, District Director of Customs, Can-
ada Cement Lafarge Limited, Citadel
Cement Corporation, Northeast Cement
Division, Lake Ontario Cement Limited,
Rochester Portland Cement Corp., St.
Lawrence Cement Company, Indepen-
dent Cement Corporation, and Genstar
Ltd., Defendants.

No. 78-CV-640.

United States District Court,
N. D. New York.

Feb. 16, 1979.

Barnes, Richardson & Colburn, New York City, Ainsworth, Sullivan, Tracy & Knauf, Albany, N. Y., for plaintiff; Andrew P. Vance, James H. Lundquist, Michael A. Johnson, Thomas J. O'Neill, New York City, Thomas F. Tracy, Albany, N. Y., of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., David M. Cohen, Acting Branch Director, Dept. of Justice, Civ. Div., Washington, D. C., George H. Lowe, U. S. Atty., N.D.N.Y., Syracuse, N. Y., for defendants Blumenthal, Chasen, and Nystrom; Velta A. Melnbrencis, Asst. Branch Director, New York City, Terrence M. Kelly, Asst. U. S. Atty., Albany, N. Y., of counsel.

Shearman & Sterling, New York City, Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for defendant-intervenors Canada Cement Lafarge Limited and Citadel Cement Corporation, Northeast Cement Division; W. Foster Wollen, Donald L. Cuneo, David J. Mark, New York City, Kenneth E. Ackerman, Syracuse, N. Y., of counsel.

Arter & Hadden, Cleveland, Ohio, McNamee, Lochner, Titus & Williams, P. C., Albany, N. Y., for defendant-intervenors Lake Ontario Cement Limited and Rochester Portland Cement Corp.; M. Neal Rains, Cleveland, Ohio, Earl H. Gallup, Jr., Albany, N. Y., of counsel.

Pope, Ballard & Loos, Washington, D. C., DeGraff, Foy, Conway & Holt-Harris, Albany, N. Y., for defendant-intervenors St. Lawrence Cement Company and Independent Cement Corp.; Thomas A. Rothwell, Jr., Washington, D. C., Frank J. Lasch, Michael J. Cunningham, Albany, N. Y., of counsel.

Williams & King, Washington, D. C., Evans, Severn, Bankert & Peet, Utica, N. Y., for defendant-intervenor Genstar Ltd.; William K. Ince, Washington, D. C., Philip A. Rayhill, Utica, N. Y., of counsel.

MEMORANDUM–DECISION and ORDER

JAMES T. FOLEY, Chief Judge.

By this action, plaintiff Flintkote Company, Glens Falls Division, ("Flintkote") seeks to enjoin defendants W. Michael Blumenthal, Secretary of the Treasury ("Secretary"), Robert E. Chasen, Commissioner of Customs, and W. Richard Nystrom, District Director of Customs at the Port of Ogdensburg, New York, from proceeding with the appraisement and liquidation of entries of portland hydraulic cement, of every type except white nonstaining cement, from Canada into the United States, except as may be necessary for Flintkote to perfect jurisdiction in the United States Customs Court, made on or after March 17, 1978. The injunction sought, by its terms, would expire upon final resolution of Flintkote's contemplated suit in the Customs Court and its appellate tribunals challenging the Secretary's failure to impose special dumping duties upon this merchandise and the determination of the United States International Trade Commission ("ITC") upon which the Secretary's action is founded. Plaintiff further seeks an order of this Court directing the Secretary to cancel any liquidations of such entries made on or after September 28, 1978, and declaring that the Antidumping Act of 1921, as amended, 19 U.S.C. §§ 160 *et seq.*, and in particular 19 U.S.C. § 160 (b)(1)(B) requires that all of the above relief be granted.

Now before the Court is plaintiff's motion for a preliminary injunction, which essentially seeks the same relief requested in

its complaint; that is, an injunction *pendente lite* in the United States Customs Court and its appellate tribunals. Also before the Court is a motion to dismiss by defendants Blumenthal, Chasen, and Nystrom (hereinafter sometimes referred to as "the federal defendants") on the ground of lack of jurisdiction over the subject matter or, in the alternative, failure to state a claim upon which relief can be granted.

During oral argument on January 15, 1979, I granted four separate motions from the bench made by Canada Cement Lafarge Limited and Citadel Cement Corporation, Northeast Cement Division, Lake Ontario Cement Limited and Rochester Portland Cement Corp., St. Lawrence Cement Co. and Independent Cement Corporation, and Genstar Ltd. to intervene under Rule 24(a), Fed.R.Civ.P., in this action as parties-defendant. In addition, while a separate motion to dismiss has been filed by defendant-intervenors St. Lawrence Cement Co. and Independent Cement Corporation, all other defendant-intervenors have chosen to join in the motion to dismiss the complaint made by the federal defendants. It should be noted that these defendant-intervenors are exporters, importers, and/or distributors of portland hydraulic cement from Canada.

## I

■ The Antidumping Act of 1921, as amended, 19 U.S.C. §§ 160 *et seq.*, (hereinafter sometimes referred to as "the Act") deals with injurious price discrimination and is designed to prevent the

actual or threatened harm to a domestic industry caused by the sale of merchandise in the United States at prices lower than in the country of origin.

*J. C. Penney Co. v. United States Treasury Department*, 439 F.2d 63, 64 (2d Cir.), *cert. denied*, 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). Procedurally, the Act entails two separate determinations: First, the Secretary must make a determination as to whether or not a class or kind of merchandise is being sold or is likely to be sold in this country or elsewhere at less than fair value ("LTFV"); second, if the first determination is in the affirmative, then the ITC must determine whether an industry in this country is being or is likely to be injured, or is prevented from being established, by reason of the importation of such merchandise into the United States, *see* 19 U.S.C. § 172.

■ Once a tentative determination is made by the Secretary that sales are being or are likely to be made at LTFV, he must require the withholding of appraisement, and by implication liquidation as well until his further order or until a "dumping finding" is published. 19 U.S.C. § 160(b)(1)(B). While appraisement involves a determination of the value of imported merchandise, liquidation is the final administrative assessment of customs duties. The evident purpose of this provision is to make possible the imposition of special dumping duties, at least from the date of a withholding of appraisement notice, in the event of an ultimate "dumping finding." *See* 19 U.S.C. § 167.

If both the Secretary and the ITC reach an affirmative determination, then a "dumping finding" is published by the Secretary and a "special dumping duty" is collected, if appropriate, on all unappraised entries of the merchandise in question that entered for consumption not more than 120 days before the issue of dumping was raised by or presented to the Secretary. 19 U.S.C. §§ 160(a), 161(a). *See* 19 C.F.R. § 153.43 (1978). The general procedures followed in a dumping investigation are set forth in *Timken Co. v. Simon*, 176 U.S.App.D.C. 219, 221–22, 539 F.2d 221, 223–24 (1976), and for present purposes need not be further discussed.

## II

Portland hydraulic cement, a mixture of limestone, clay, silica, and other raw materials, is used to form concrete and is primarily consumed in highway and building construction. This merchandise is imported from Canada free of duty under the present Tariff Schedules of the United States. On or about August 2, 1977, plaintiff Flintkote, an American manufacturer of portland hydraulic cement, wrote to the Commissioner

of Customs alleging that imports of portland hydraulic cement, other than white nonstaining cement, (hereinafter referred to as "portland hydraulic cement") from Canada were being or were likely to be sold at LTFV causing injury to an industry in the United States within the meaning of the Act. *See* 19 U.S.C. § 160(c)(1); 19 C.F.R. §§ 153.26, 153.27 (1978). On the basis of this information, the Secretary on September 8, 1977, or 37 days after receipt of Flintkote's petition, published an "Antidumping Proceeding Notice" with regard to portland hydraulic cement from Canada and began an investigation. 42 Fed. Reg. 45059 (1977). *See* 19 U.S.C. § 160(c)(1); 19 C.F.R. § 153.30 (1978).

Thereafter, on March 17, 1978, or six months and nine days after publication of the antidumping proceeding notice, the Secretary published a "Withholding of Appraisement Notice," to be effective immediately and to expire at the end of six months unless previously revoked, and made a tentative determination that sales at LTFV were being made. 43 Fed. Reg. 11294–95 (1978). *See* 19 U.S.C. § 160(b)(1)(B); 19 C.F.R. §§ 153.32, 153.35(b) (1978). The effect of this notice was to make importers of portland hydraulic cement from Canada potentially liable for special dumping duties from the date of the notice and to impose the requirement of filing a bond to cover this potential liability in the event of an ultimate "dumping finding" to obtain the release of any such merchandise from the United States Customs Service. *See* 19 U.S.C. § 167; 19 C.F.R. § 153.50 (1978).

On June 22, 1978, or three months and five days after publication of the withholding of appraisement notice, the Secretary concluded his investigation and on June 28, 1978, a "Determination of Sales at Less Than Fair Value" was published to the effect that portland hydraulic cement from Canada is being or is likely to be sold at LTFV and that the case was being transferred to the ITC pursuant to 19 U.S.C. § 160(a) and 19 C.F.R. § 153.41 for a determination as to whether these sales at LTFV have caused injury or are likely to cause injury to an industry in the United States.

43 Fed. Reg. 28066–68 (1978). *See* 19 U.S.C. § 160(b)(3); 19 C.F.R. §§ 153.36, 153.37 (1978).

On July 6, 1978, the ITC published a "Notice of Investigation and Hearing." 43 Fed. Reg. 29192 (1978). *See* 19 C.F.R. § 207.4 (1978). Then, on September 25, 1978, after three days of public hearings and within three months after the Secretary's publication of a LTFV determination, the ITC determined, by a vote of three commissioners to one with two commissioners not participating, that sales of portland hydraulic cement from Canada at LTFV in this country were not causing, nor were they likely to cause, injury to an industry in the United States within the meaning of the Act. 43 Fed. Reg. 44907–10 (1978). *See* 19 U.S.C. § 160(a); 19 C.F.R. § 207.4 (1978). In short, the ITC found that whatever injury the American cement industry is suffering, it is not causally connected with LTFV imports from Canada. Prevention of the establishment of an industry in the United States by reason of these LTFV sales was not at issue in this investigation. A petition for reconsideration filed by Flintkote was later denied by the ITC.

On September 28, 1978, the Commissioner of Customs advised the appropriate customs officers of the negative injury determination and informed them that they could now appraise and liquidate entries of portland hydraulic cement from Canada, including those entries with respect to which appraisement and liquidation had been withheld, without the imposition of special dumping duties. Furthermore, it would appear that any bonds which had been furnished to guarantee payment of any special dumping duties found to be due would be cancelled as liquidation of each entry is completed.

By letter dated October 30, 1978, plaintiff Flintkote informed the Secretary that it believes the negative injury determination of the ITC is contrary to the law and not supported by the evidence, announced its intention to appeal, and requested that the Secretary continue to withhold appraise-

ment and liquidation of entries of portland hydraulic cement from Canada made on or after March 17, 1978. On that same date, plaintiff filed an American manufacturer's petition with the United States Customs Service requesting, among other things, the imposition of special dumping duties on portland hydraulic cement from Canada. This was done to set in motion the process that would enable Flintkote to challenge the negative injury determination of the ITC in the Customs Court. *See* 19 U.S.C. § 1516(a) and (c); 28 U.S.C. §§ 1582(c), 2632(a); 19 C.F.R. § 175.11 (1978). One of the errors that Flintkote attributes to the ITC is that it based its decision upon a finding of lack of injury or likelihood of injury to the American cement industry as a whole rather than upon a finding with regard to injury or likelihood of injury to the northeast regional market of the American cement industry. *See* U.S.Code Cong. & Admin. News, pp. 7315–17 (1974).

By letter dated November 20, 1978, plaintiff's request that appraisement and liquidation continue to be withheld was denied on behalf of the Secretary. Consequently, plaintiff commenced the present action in this Court on December 8, 1978, and the Secretary and the United States Customs Service, which is a constituent unit of the United States Department of the Treasury, agreed to temporarily suspend appraisements and liquidations until a decision by this Court on the merits of the action. In the meantime, a notice was published on behalf of the United States Customs Service and the Department of the Treasury on December 12, 1978, advising the public that Flintkote had filed a petition pursuant to 19 U.S.C. § 1516. 43 Fed. Reg. 58129 (1978). *See* 19 C.F.R. § 175.21 (1978).

Flintkote's § 1516 petition was denied on Friday, January 12, 1979. 44 Fed. Reg. 6550–51 (1979). During oral argument in this Court the following Monday, plaintiff indicated its intention to promptly commence an action in the United States Customs Court to review the substantive basis of its claim. *See* 19 U.S.C. § 1516(c); 28 U.S.C. § 2631(b); 19 C.F.R. §§ 175.23, 175.-24, 175.25 (1978).

Nevertheless, plaintiff Flintkote argues that inasmuch as liquidations generally become final and conclusive after the expiration of 90 days, *see* 19 U.S.C. §§ 1501, 1514, 1516(g), 1520, 1521, and because LTFV sales of portland hydraulic cement from Canada have been and are continuing to be made in this country without the threat of possible imposition of special dumping duties in the event of a successful challenge of the ITC determination in the Customs Court, Flintkote's business is being irreparably injured.

The penultimate purpose of this action is to obtain a judicial interpretation of 19 U.S.C. § 160(b)(1)(B), which provides that after a tentative affirmative determination of sales at LTFV has been made by the Secretary, he may terminate the withholding of appraisement, under such regulations as he may prescribe, by "further order of the Secretary" or by publication of a "dumping finding." Plaintiff maintains that this provision should be construed by this Court to require the Secretary to continue the withholding of appraisements until an American manufacturer, such as Flintkote, if it desires, exhausts all avenues of appeal from a negative injury determination of the ITC and that this Court should direct the Secretary to promulgate regulations accordingly, *see* 19 U.S.C. § 173. *But see* 19 C.F.R. § 153.35 (1978). Furthermore, it is plaintiff's contention that insofar as the United States Customs Court is without equitable power to enjoin liquidation of those entries that the Secretary has not continued to withhold, Flintkote will not have an adequate remedy in the Customs Court unless this Court grants the relief requested. *But see* 26 U.S.C. § 7421(a); 28 U.S.C. § 2201; *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); *Watson v. Blumenthal,* 586 F.2d 925 (2d Cir. 1978).

### III

#### A.

One of the major issues raised in this action is whether or not, under the Anti-

dumping Act of 1921, withholding of appraisement should be continued throughout any period during which judicial review, if sought, of a negative injury determination is perfected and pending. This question, however, for the time being must be left unanswered, for in my judgment this Court lacks jurisdiction over the subject matter of plaintiff's complaint.

The claim in this Court is alleged to be founded on the following bases for jurisdiction.

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for . . . revenue from imports . . . *except matters within the jurisdiction of the Customs Court.*

28 U.S.C. § 1340 (emphasis added).

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.

> The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

28 U.S.C. § 1337.

> The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy . . . arises under the Constitution, laws, or treaties of the United States . . . [and is] brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

28 U.S.C. § 1331(a).

■ It is clear that the jurisdiction of the United States Customs Court and the United States district courts are mutually exclusive. The elaborate provisions of the Antidumping Act and its related regulations are intricate and unique and are part of a highly specialized body of law that requires review by a highly specialized court having special expertise in such matters. Therefore, analysis must begin with the subject-matter jurisdiction of the Customs Court because if jurisdiction does not exist in this Court pursuant to 28 U.S.C. § 1340, which must be viewed as the controlling grant of jurisdiction with regard to the claim raised in this action, then jurisdiction in this Court, by implication, is precluded under the other jurisdictional statutes relied upon by the plaintiff. *See J. C. Penney Co. v. United States Treasury Department, supra,* 439 F.2d at 68.

■ Congress has chosen to give the United States Customs Court

> *exclusive jurisdiction* of civil actions brought by American manufacturers, producers, or wholesalers pursuant to section 516 of the Tariff Act of 1930, as amended [19 U.S.C. § 1516].

28 U.S.C. § 1582(b) (emphasis added). By virtue of 19 U.S.C. § 1516 an American manufacturer may contest, by way of judicial review, a negative injury determination made by the ITC. *SCM Corp. v. United States,* 450 F.Supp. 1178 (Cust. Ct. 1978) (Re, C. J.). It is also evident that the same right to review granted to foreign manufacturers or importers under 19 U.S.C. § 1514 is now accorded American manufacturers, producers, or wholesalers under 19 U.S.C. § 1516. *See SCM Corp. v. United States, supra,* 450 F.Supp. at 1187–90; U.S.Code Cong. & Admin. News, pp. 7314–15 (1974). Nonetheless, I do not find the fact that a foreign manufacturer or importer can protest each and every assessment of special dumping duties on liquidated entries of merchandise, while an American manufacturer can only contest the rate of duty, if any, imposed on a single liquidated entry made after an adverse finding by the Secretary to be inconsistent, as plaintiff would suggest, with the intent of Congress. This factor, in my judgment, goes to the remedy and not to the right itself.

■■ In light of the lengthy submissions filed by the parties, I feel it is necessary for the Court to comment on some of the arguments raised in this lawsuit. Plaintiff Flintkote contends that, under the circum-

stances presented by this case and in light of the above-mentioned difference between § 1514 actions and § 1516 actions, the Antidumping Act must be construed to require the Secretary to withhold appraisements until judicial review has been exhausted. Interestingly, however, the Act cannot be interpreted to provide for the withholding of appraisement pending judicial review if the Secretary initially and by final decision makes a negative LTFV determination, *see* 19 U.S.C. § 160(b)(1)(C) and (b)(3), or if he decides not to initiate an investigation or to terminate an investigation at the LTFV stage, *see* 19 U.S.C. § 160(b)(1)(C), (b)(3) and (c). *See* 19 U.S.C. § 1516(d). Yet, plaintiff would have this Court hold that when it is a negative injury determination by the ITC that is sought to be reviewed after the Secretary has made an affirmative LTFV determination the withholding of appraisements must continue. This of course would have the effect of hindering the business operations of foreign manufacturers and importers to the benefit of American manufacturers. Another question of interpretation, not raised by this lawsuit, is whether the Act provides for the continued withholding of appraisement if what is sought to be reviewed is a negative LTFV determination of the Secretary that followed an initial or tentative determination in the affirmative. *See* 19 U.S.C. § 160(b)(1)(B) and (b)(3). In any event, it is clear to me that the Act does not proscribe LTFV sales in and of themselves. *See, e. g.,* U.S.Code Cong. & Admin. News, p. 7316 (1974).

■ From my reading of the Act, it appears that the procedures set forth therein deal primarily with its administration rather than the review of administrative action taken thereunder. The operative language of the Antidumping Act sought to be interpreted in this action provides that if the Secretary makes a tentative determination that sales are being made at LTFV, he is to withhold appraisement with regard to such merchandise until "further order of the Secretary" or until a dumping finding is published. 19 U.S.C. § 160(b)(1)(B). The Secretary maintains that the statutory scheme contemplates the withholding of appraisement, a provisional remedy of limited scope, only for the period of administrative investigation, *see SCM Corp. v. United States, supra,* 450 F.Supp. at 1180–81; in other words, that the "further order of the Secretary" language refers to situations where the Secretary makes a final determination not to initiate or to discontinue his investigation based on a negative LTFV finding or where a dumping finding cannot be made because of a negative injury determination made by the ITC. *Accord, Timken Co. v. Simon, supra,* 176 U.S.App.D.C. at 226, 539 F.2d at 228. I find merit in this analysis.

Acceptance of the Secretary's interpretation would also mean that the withholding of appraisement period would coincide with the time periods established in the Act for completion of agency action. *Compare* 19 U.S.C. § 160, *with* 19 C.F.R. § 153.35 (1978). *See also* International Anti-Dumping Code of 1967, article 10, *signed* June 30, 1967, 19 U.S.T. 4348 (effective July 1, 1968); Act of Oct. 24, 1968, Pub.L. No. 90–634, Title II, § 201(a), 82 Stat. 1347; *Timken Co. v. Simon, supra,* 176 U.S.App.D.C. at 226–27, 539 F.2d at 228–29.

In response, Flintkote argues that inasmuch as this interpretation would require that imports of portland hydraulic cement from Canada be appraised and liquidated without the imposition of special dumping duties while its claim is perfected and pending before the Customs Court, *see* 19 U.S.C. § 1516(e), and because a Customs Court decision would have only prospective effect, *see* 19 U.S.C. § 1516(g), many entries would escape the imposition of special dumping duties unless a preliminary injunction is granted by this Court. Notably, however, 19 U.S.C. § 1516(g) on its face appears to presuppose that appraisements and liquidations will be taking place during the time it takes for an American manufacturer to contest agency action that failed to terminate with a "dumping finding."

At one time the contingent liability of importers for special dumping duties was of uncertain duration. This policy was

changed by Congress which has demonstrated a continuing concern with limiting such liability. *See generally* Customs Administrative Act: Hearings on H.R. 8099 Before a Subcomm. of the Senate Finance Comm., 75th Cong., 2d Sess. 14–15 (1938); U.S.Code Cong. & Admin. News, pp. 2215, 2242–43 (1978). Flintkote's interpretation, however, would extend contingent liabilities to an uncertain future date. *See SCM Corp. v. United States International Trade Commission,* 179 U.S.App.D.C. 110, 119, 549 F.2d 812, 821 (1977), *rev'g & remanding* 404 F.Supp. 124 (D.D.C.1976). The existence of an order of the Secretary to withhold appraisement, however, is an impediment to trade and an interference with the smooth flow of international commerce. *See* U.S. Code Cong. & Admin. News, p. 7308 (1974). Congress is certainly aware of this and has evinced in the past a concern that the administrative process under the Antidumping Act be concluded as expeditiously and efficiently as is possible. *See* U.S.Code Cong. & Admin. News, pp. 3498–99 (1958); U.S. Code Cong. & Admin. News, pp. 7307–08 (1974).

Suffice it to say that from my review of this area of the law it does not appear that the interpretation advanced by the Secretary is repugnant to the Antidumping Act. *See generally* 61 Cong. Rec. 1565 (1921). Once the right to judicial review is perfected, an American manufacturer will have its day in court and at the earliest practicable date. *See* 28 U.S.C. §§ 2633, 2602(a).

Additionally, it is noteworthy that relief similar to that requested in this action was not granted in *SCM Corp. v. United States International Trade Commission, supra,* at either the district court, 404 F.Supp. at 131–32, or at the court of appeals, 549 F.2d at 815 n.6, level. In that action, SCM Corporation, an American manufacturer, sought review of an ITC negative injury determination in the district court and requested that the Secretary be enjoined from permitting Customs officials to appraise and liquidate entries of the contested merchandise pending final resolution of its suit in the district court. It was this controversy that led the United States Customs Court to hold that an action to contest a negative injury determination of the ITC was within the exclusive subject-matter jurisdiction of that court. *SCM Corp. v. United States, supra,* 450 F.Supp. 1178 (Cust. Ct. 1978). Although the Court of Appeals for the District of Columbia Circuit held that the district court should retain jurisdiction, thereby allowing the Customs Court in the first instance to decide whether it had jurisdiction over the plaintiff's suit, SCM Corporation's claim for injunctive relief was denied.

■ In any event, whether or not the Secretary correctly interpreted and applied the Antidumping Act with regard to the withholding of appraisements in connection with the claim before this Court, in my judgment, is a question cognizable in the Customs Court which has broad and exclusive jurisdiction over matters relating to the assessment and collection of customs duties. *See J. C. Penney Co. v. United States Treasury Department, supra,* 439 F.2d at 66, *citing David L. Moss Co. v. United States,* 103 F.2d 395, 397 (Cust. & Pat.App. 1939); *City Lumber Co. v. United States,* 457 F.2d 991, 994, 59 C.C.P.A. 89 (1972); *SCM Corp. v. United States, supra,* 450 F.Supp. at 1187; *F. W. Myers & Co. v. United States,* 376 F.Supp. 860, 878 (Cust. Ct. 1974); *C. L. Hutchins & Co. v. United States,* 334 F.Supp. 188, 190 (Cust. Ct. 1971). *See generally* 28 U.S.C. § 255(a)(2). Therefore, the question as to which entries should be subjected to the imposition of special dumping duties, *i. e.,* whether entries of portland hydraulic cement from Canada into the United States made after termination of the dumping investigation and during the period of time that Flintkote's appeal pursuant to § 1516 is perfected and pending should be subject to special dumping duties in the event that the Customs Court, the Court of Customs and Patent Appeals, or the Supreme Court later reverses the negative injury determination of the ITC, is a matter of customs law within the purview of a § 1516 petition and is within the exclusive jurisdiction of the Customs Court. *See generally J. C. Penney Co. v.*

*United States Treasury Department, supra,* 439 F.2d at 66–67. Reason dictates that the Secretary's refusal to continue withholding appraisements of such entries is an official act underlying Flintkote's claim for the imposition and collection of special dumping duties and that the Customs Court, if it rules in Flintkote's favor, should determine what entries are, or should have been, subject to its decision.

In essence, what is sought in this Court is some kind of ancillary relief in connection with a matter that ultimately must be decided, if at all, by the United States Customs Court. I must note, however, that this question may never have to be reached by that court or its appellate tribunals, in the context of this dispute, if they uphold the ITC's negative injury determination. Nevertheless, to recognize jurisdiction in this Court to grant such relief would, in my judgment, do violence to the dichotomy of federal jurisdiction heretofore exercised by the Customs Court and the district courts. This is not to say that this division of jurisdiction is always preferable, but that as a matter of public policy and effective judicial administration further division is uncalled for and would be contrary to the statutory scheme.

Moreover, in my judgment, this case does not come within the ambit of the judicially created exception to the exclusive jurisdiction of the United States Customs Court that vests jurisdiction in the federal district courts when an adequate remedy is unavailable in the Customs Court. *See, e. g., Sneaker Circus, Inc. v. Carter,* 566 F.2d 396, 399 (2d Cir. 1977); *J. C. Penney Co. v. United States Treasury Department, supra,* 439 F.2d at 68.

It is evident that Congress intended to provide a complete, integral, and uniform system for the adjudication of matters arising under the customs laws. Plaintiff contends, however, that inasmuch as the remedy provided for in the Customs Court is prospective only, plaintiff cannot obtain *complete* relief in that court and therefore this action must be recognized as coming within the exception thereby requiring this

Court to exercise its residual jurisdiction over this customs matter.

Initially, let me state that I find plaintiff's assertion that the Customs Court, which is now an article III court, is without any equitable jurisdiction hard to accept. *See United States v. Boe,* 543 F.2d 151, 157 n.9 (Cust. & Pat.App. 1976). *Compare Matsushita Electric Industrial Co. v. United States Treasury Department,* 60 C.C.P.A. 85, 485 F.2d 1402 (Cust. & Pat.App.) (per curiam), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973), *with Consumers Union of United States, Inc. v. Committee For the Implementation Of Textile Agreements,* 182 U.S.App.D.C. 423, 561 F.2d 872 (1977) (per curiam), *cert. denied,* 435 U.S. 933, 98 S.Ct. 1509, 55 L.Ed. 531 (1978). Yet, it is true that the Customs Court cannot act upon Flintkote's requested relief until jurisdiction in that court is perfected. *See Dexter v. United States,* 424 F.Supp. 1069 (Cust. Ct. 1977). But this fact alone does not work to vest jurisdiction in this Court. *See J. C. Penney Co. v. United States Treasury Department, supra,* 439 F.2d at 68.

Be that as it may, I believe that this exception includes only those situations where it can be said that the remedy approaches total nonexistence and not a situation where an assertion is made that complete relief can only be awarded in a federal district court.

In those extraordinary cases where it was held that this exception was satisfied the determinative factor was the absence of any available relief in the Customs Court. *See SCM Corp. v. United States, supra,* 450 F.Supp. at 1191–93. Thus, in *Sneaker Circus, Inc. v. Carter, supra,* 566 F.2d 396 (2d Cir. 1977), jurisdiction could be obtained only if persons who were not parties to the action violated a trade agreement entered into between the United States and two foreign countries. The Court of Appeals, Second Circuit, held that in such a situation the claim presented would never ripen sufficiently to give rise to Customs Court jurisdiction. *Id.* at 399–400.

In *Timken Co. v. Simon, supra,* 176 U.S. App.D.C. 219, 539 F.2d 221 (1976), the issue

was whether the Secretary had exceeded his authority by revocation of a withholding of appraisement notice after the Secretary had made an affirmative LTFV determination and the ITC had made an affirmative injury determination, based on likelihood of future injury, but before a "dumping finding" had been published in accordance with the Antidumping Act thereby allowing the entries in question to be appraised and liquidated without being subject to special dumping duties. By this lawsuit the plaintiff sought to challenge the Secretary's refusal to impose special dumping duties on those past entries. The Court of Appeals for the District of Columbia Circuit held that insofar as no remedy was available in the Customs Court because the prerequisites for jurisdiction might never occur in connection with future entries upon which special dumping duties would be imposed, jurisdiction was properly exercised by the district court. *Id.* 176 U.S.App.D.C. 224 & n.7, 539 F.2d at 226 & n.7. Thus, the Secretary was ordered to perform the nondiscretionary ministerial act of publishing a dumping finding and to withhold appraisement of the subject entries until after such publication.

In contrast, it is evident that Flintkote will soon be in a position to contest the amount of special dumping duties, or lack thereof, assessed on entries of portland hydraulic cement from Canada. The gravamen of plaintiff Flintkote's grievance and the right to be protected should be the proper administration of the customs laws, not the collection of customs duties. *See SCM Corp. v. United States International Trade Commission, supra,* 404 F.Supp. at 131. It is clear to my mind that the remedy afforded plaintiff in the Customs Court will secure that right. *Cf. Waite v. Macy,* 246 U.S. 606, 610, 38 S.Ct. 395, 62 L.Ed. 892 (1918).

The cases that have recognized this judicial exception to the exclusive jurisdiction of the Customs Court make no mention that a remedy must provide a plaintiff with the complete relief requested to be deemed adequate. On the contrary, the fact that a more desirable remedy is unavailable has

been held not to mean that the existing remedy is inadequate. *See, e. g., J. C. Penney Co. v. United States Treasury Department, supra,* 439 F.2d at 68. Furthermore, it has been held that this exception should be narrowly construed. *See, e. g., Sneaker Circus, Inc. v. Carter, supra,* 566 F.2d at 399.

In my judgment, the remedy available to plaintiff Flintkote in the Customs Court, should Flintkote be successful, will provide relief that is both meaningful and adequate. Certainly, the remedy available in the Customs Court more nearly approaches complete relief rather than no relief when placed on a continuum representing the entire spectrum of existent relief.

Therefore, under these circumstances, this Court need not delve further into the provisions and legislative histories of the Antidumping Act of 1921, 42 Stat. 11, the Tariff Act of 1930, 46 Stat. 735, the Customs Administrative Act of 1938, 52 Stat. 1077, and the Trade Act of 1974, 88 Stat. 2052, among others. Surely, the Customs Court is in a much better position to review and analyze these legacies of the various witenagemots that created, formed, and revised the present statutory framework.

### B.

■ Inasmuch as this Court lacks subject-matter jurisdiction over this action, plaintiff's request for a preliminary injunction must be denied. *See Small v. Kiley,* 567 F.2d 163, 164 n.1 (2d Cir. 1977) (per curiam). Moreover, aside from the jurisdictional issue, in my judgment, plaintiff has failed to show probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation as well as possible irreparable injury or a balance of hardships tipping decidedly in its favor. *See, e. g., State of New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 750 (2d Cir. 1977).

■ A preliminary injunction is a drastic remedy especially when what is sought, as in this case, is a mandatory injunction and such relief should be granted only upon

a clear showing that the moving party is entitled to the relief requested. *See Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 441–42 n.3 (2d Cir. 1977). Plaintiff has not carried that burden. *See generally* 28 U.S.C. § 2635(a); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 449, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978); *Federal Maritime Commission v. Seatrain Lines, Inc.*, 411 U.S. 726, 745–46, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973); *McMahon v. Califano*, Slip Op. 1115, 1124 (2d Cir. January 24, 1979).

Additionally, in my judgment, plaintiff Flintkote's assertion of commercial injury is purely speculative in that it could possibly materialize only if the ITC's determination that the American cement industry is not being, nor is it likely to be, injured by virtue of LTFV sales of portland hydraulic cement from Canada *and* the Secretary's decision to discontinue the withholding of appraisements and liquidations after termination of the dumping investigation are both reversed upon final resolution of Flintkote's contemplated suit in the Customs Court and its appellate tribunals. *See State of New York v. Nuclear Regulatory Commission, supra*, 550 F.2d at 755; *City Lumber Co. v. United States, supra*, 457 F.2d at 994. In Part III A. of this decision I have expressed my opinion as to plaintiff's likelihood of success on certain issues that are sure to be raised in that action and they need not be restated here.

### IV

Accordingly, plaintiff's motion for a preliminary injunction is denied. The motions to dismiss made by the federal defendants and by defendant-intervenors St. Lawrence Cement Co. and Independent Cement Corporation are hereby granted on the ground of lack of jurisdiction over the subject matter and the complaint is dismissed in its entirety.

Through this litigation, I have been made aware of the apparent shortage of portland hydraulic cement that has developed in certain areas of the United States as well as the disruptive effect to and virtual embargo of international trade that could ensue from

further extending the contingent liabilities of foreign manufacturers and importers for special dumping duties. At the same time, however, I recognize the importance of the issues raised by the plaintiff in this action and respect the fact that a major purpose of the Antidumping Act, along with its withholding of appraisement provision, is to deter potential dumpers from making LTFV sales. Consequently, to allow sufficient time for plaintiff Flintkote to file a Notice of Appeal from this denial of injunctive relief and dismissal of its complaint and to seek further stay in the Court of Appeals, Second Circuit, if the plaintiff be so advised, the order herein is stayed until February 22, 1979, at 2:00 P.M. and the federal defendants are directed to continue to withhold appraisement and liquidation of the entries in question until that time. *See* Fed.R.App.P. 8(a). *See also J. C. Penney Co. v. United States Treasury Department, supra*, 439 F.2d at 64; *A. H. Bull Steamship Co. v. National Marine Engineers' Beneficial Association*, 250 F.2d 332, 337 (2d Cir. 1957).

It is so Ordered.