**BINGHAM & TAYLOR, DIVISION, VIRGINIA INDUSTRIES, INC., et al., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

No. 85–07–00909.

United States Court of International Trade.

Feb. 14, 1986.

Paul C. Rosenthal and Kathleen T. Weaver, Collier, Shannon, Rill & Scott, Washington, D.C., for plaintiffs.

Lyn M. Schlitt, General Counsel, Michael P. Mabile, Asst. General Counsel, and John C. Kingery, U.S.I.T.C., Washington, D.C., for defendant.

### MEMORANDUM OPINION

CARMAN, Judge:

In this countervailing duty action plaintiffs contest the preliminary determination of the United States International Trade Commission (Commission) that there is no reasonable indication the domestic light iron construction castings industry is materially injured or threatened with material injury by reason of subsidized imports from Brazil. *Iron Construction Castings from Brazil, Canada, India, and the People's Republic of China,* 50 Fed.Reg. 27, 498 (1985). Defendant opposes plaintiffs' Rule 56.1 motion for judgment upon the agency record, contending that the Commission's preliminary determination is not arbitrary, capricious, nor an abuse of discretion, and is in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(A) (1982) (standard of review). For the reasons that follow, the Court remands this action to the Commission for redetermination.

*Background*

This controversy arises out of five simultaneously initiated investigations involving iron construction castings. Four of the investigations are antidumping investigations in which the Commission found that there is a reasonable indication that the domestic industry is materially injured or threatened with material injury by reason of sales at less than fair value of light and heavy construction castings imported from Brazil, Canada, India and the Peoples Republic of China. Plaintiffs in this case challenge the Commission's preliminary determination in the fifth investigation, which is a countervailing duty investigation of iron construction castings from Brazil. The Commission's determination in the countervailing duty investigation, published in the same notice as the determinations for the antidumping investigations, was that a domestic industry is materially injured by Brazilian imports of heavy iron construction castings, while there is no reasonable indication that a domestic industry is materially injured or threatened with material injury, or that the establishment of an industry in the United States is materially retarded, by reason of Brazilian light iron construction castings. *See* 50 Fed. Reg. 27,498.

In reaching its preliminary affirmative injury determinations in the antidumping investigations, the Commission cumulated the impact of the imports from the four countries on the domestic industry. In reaching the preliminary determination in the countervailing duty investigation, however, the Commission refused to cumulate the impact of imports subject to the antidumping investigations with the impact of imports subject to the Brazilian countervailing duty investigation. *See Iron Construction Castings from Brazil, Canada, India, and the People's Republic of China,* U.S.I.T.C. Public. 1720, at 12, Investi-

gation No. 701–TA–249 (Preliminary) (June 1985).

*Opinion*

■ The primary issue is whether section 612(a)(2) of the Trade and Tariff Act of 1984 (the 1984 Act), Pub.L. No. 98–573, 98 Stat. 3033 (to be codified at 19 U.S.C. § 1677(7)(C)(iv)), requires the Commission to cumulatively assess the volume and effect of imports of like products subject to both antidumping and countervailing duty investigations. Section 612(a)(2) of the 1984 Act amended section 771(7)(C) of the Tariff Act of 1930 by adding *inter alia* the following:

(iv) **Cumulation.**—For purposes of clauses (i) [volume] and (ii) [price], the Commission shall cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry in the United States market.

19 U.S.C.A. § 1677(7)(C)(iv) (West Supp. 1985).

Plaintiffs contend that the subsection (iv) cumulation provision quite broadly "requires the Commission to cumulate when two criteria are satisfied: (1) imports of like products are subject to investigation, and (2) imports compete with one another and with the domestic like product." Plaintiffs' Brief at 13. Plaintiffs' position is that there is no additional requirement that the cumulated imports be subject to the same type of investigation and, therefore, subsection (iv) requires the "cross-cumulation" of the volume and effect of imports subject to both antidumping and countervailing duty investigations.[1]

Defendant contends that as the 1984 Act provision for cumulation is entirely silent concerning cross-cumulation, initial statutory directives imposing countervailing and antidumping duties continue to control.[2]

---

**1.** The term "cross-cumulation" as used in this opinion refers to the aggregation of less than fair value (dumped) and subsidized imports from two or more countries for purposes of volume and price analysis.

**2.** The Commission cited the respective provisions for *final* determinations, 19 U.S.C. §§ 1671d (countervailing duty investigations) and 1673d (antidumping duty investigations), as its basis for refusing to cross-cumulate. *See*

In countervailing duty cases, for instance, defendant claims that 19 U.S.C. § 1671(a) applies, which reads:

**(a) General Rule.—If—**

(1) the administering authority determines that—

(A) a country under the Agreement, or

(B) a person who is a citizen or national of such a country, or a corporation, association, or other organization organized in such a country,

is providing, directly or indirectly, a subsidy with respect to the manufacture, production, or exportation of a class or kind of merchandise imported into the United States, and

(2) the Commission determines that—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

*by reason of imports of that merchandise,*

then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, equal to the amount of the net subsidy.

19 U.S.C. § 1671(a) (1982) (emphasis added). Essentially, defendant's argument is that section 1671(a) restricts the Commission's injury investigation in countervailing duty cases to the injury "by reason of imports of that merchandise" investigated with respect to the provision of a subsidy. By the same reasoning, defendant argues that in antidumping duty investigations 19 U.S.C. § 1673 restricts the Commission's injury investigation to the injury "by reason of that merchandise" investigated with respect to sales in the United States at less than fair value.

The Court finds that section 1677(7)(C)(iv), without exception, requires

the cumulation of imports from two or more countries of like products "subject to investigation" that compete with one another and with the domestic like product, regardless of whether the investigations relate to dumping, subsidies, or both.

■ Although an agency's interpretation of a statute it is charged with enforcing is entitled to deference if it is reasonable and not in conflict with congressional intent, *see Asahi Chemical Industry Co. v. United States,* 4 CIT 120, 123–25, 548 F.Supp. 1261, 1264–65 (1982), the court will not defer to an interpretation that is contrary to the express language of the statute, its purpose, and congressional intent. *See Board of Governors of the Federal Reserve System v. Dimension Financial Corp.,* — U.S. —, —, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986); *Rose v. Lundy,* 455 U.S. 509, 517, 102 S.Ct. 1198, (1982); *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979). The Court is constrained to conclude in the instant case that the Commission's refusal to cumulate is indeed contrary to the statute, its purpose, and legislative intent.

The legislative history of the 1984 Act does not explicitly address the issue of cross-cumulation. The House Ways and Means Committee, however, provided the following explication of the new cumulation provision:

*Reasons for change*

The purpose of mandating cumulation under appropriate circumstances is to eliminate inconsistencies in Commission practice and to ensure that the injury test adequately addresses simultaneous unfair imports from different countries. Most Commissioners have applied cumulation under certain circumstances but have articulated a variety of differing criteria and conditions. However, cumulation is not required by statute. In addition, a few Commissioners have imposed conditions which do not seem justified to the Committee.

U.S.I.T.C. Public. 1720, at 12–13. Defendant in its briefs focused on 19 U.S.C. §§ 1671(a) and

1673, though, apparently because this action is a challenge to a *preliminary* determination.

The Committee believes that the practice of cumulation is based on the sound principle of preventing material injury which comes about *by virtue of several simultaneous unfair acts or practices.* The Committee amended the criteria to permit cumulation of imports from various countries that each account individually for a very small percentage of total market penetration, but when combined may cause material injury. The requirement in the bill as introduced that imports from each country have a "contributing effect" in causing material injury would have precluded cumulation in cases where the impact of imports from each source treated individually is minimal but the combined impact is injurious. The Committee does intend, however, that the marketing of imports that are cumulated be reasonably coincident. Of course, imports of like products from countries not subject to investigation would not be included in the cumulation.

H.R.Rep. No. 725, 98th Cong., 2d Sess. 37, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4910, 5127, 5164 (emphasis added).

In keeping with the foregoing views, Congress broadly required cumulation of the injurious effects of "simultaneous unfair acts or practices" if certain conditions are met. Congress's rejection of the concept of "contributing effect" underscores its intent that cumulation be broadly applied, even where the impact of unfairly traded imports from one source may be minimal, "but the combined impact is injurious." There is no doubt that the combined impact from both dumped and subsidized imports may be injurious. Further, there is no suggestion in the language of the 1984 statute or in its legislative history that the Commission separately consider the injurious effects of one type of unfair practice from those of another type of unfair practice.[3] The effects of injury from

different types of unfair trade practices upon the domestic industry are identical—it makes no difference to a domestic light construction castings producer whether it loses sales because foreign castings are dumped or because they are subsidized. As the Commission's own General Counsel correctly observed, "[t]he rationale for aggregating import data rests upon the combined effects of unfairly traded imports in contributing to injury to the domestic industry involved. The considerations are not different in countervailing duty investigations than they are in antidumping investigations." Memorandum from General Counsel to the Commission, GC–G–05, at 12–13 (Jan. 7, 1983) (quoting GC–F–186).

It is further noteworthy that when Congress considered the amendment of section 1677(7)(C) it was apprised of the question of cumulating imports of the same product in separate countervailing duty and antidumping duty investigations:

The law now permits the International Trade Commission to combine or "cumulate" imports from different countries when making injury determinations in antidumping and countervailing duty investigations. Cumulation makes sense; death by one or one hundred blows is equally fatal. The ITC, however, has been hesitant to cumulate imports at all and extremely reluctant to do so in preliminary injury investigations. *There also has been some question about cumulation of imports of the same product in separate countervailing duty and antidumping cases.* We believe that it would be helpful to amend the statute to require cumulation in certain circumstances. Such an amendment would help to ensure that domestic industries are not denied relief because of an unwise exercise of discretion by the Commission.

*Options to Improve the Trade Remedy Laws: Hearings Before the Subcomm. on*

---

**3.** The legislative history of the Trade Agreements Act of 1979 also emphasizes congressional focus on the impact to domestic industries from unfair trade practices. There too Congress viewed subsidies and dumping as "two of the most pernicious practices which distort international trade to the disadvantage of United States commerce." S.Rep. No. 249, 96th Cong., 1st Sess. 37, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 423.

*Trade of the Comm. on Ways and Means,* 98th Cong., 1st Sess. 197, 203 (1983) (statement of Adolph J. Lena) (emphasis added). Significantly, Congress did not make any exclusion or exception for cross-cumulation in the 1984 statute, but rather elected to mandate cumulation in broad terms.[4]

Defendant points out, however, that Congress intended the Trade Agreements Act of 1979 to implement two important, but separate, multilateral agreements—the Subsidies and the Antidumping Codes, that is, the Agreement on Interpretation and Application of Articles VI, XVI, and XXIII of the General Agreement on Tariffs and Trade, and the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade. *See* S.Rep. No. 249, at 37, U.S.Code Cong. & Admin.News 1979, p. 423. Moreover, Congress added material injury requirements respectively to the countervailing duty and antidumping duty statutes. Defendant thus contends that the enactment of United States obligations under the separate Codes with separate injury tests bars the cross-cumulation of injury from imports subject to separate countervailing duty and antidumping duty investigations. Defendant appears especially impressed that the injury test in subsidy cases applies only to countries that have signed the Subsidies Code, while all importers receive the benefit of an injury determination in antidumping investigations. *Compare* 19 U.S.C. §§ 1303 and 1671(b) (imposition of countervailing duties) *with* 19 U.S.C. § 1673 (imposition of antidumping duties); *see also* S.Rep. No. 249, at 61, U.S.Code Cong. & Admin.News 1979, p. 447.

Nevertheless, the definition of material injury, the respective indicia of injurious impact, and the causal nexus between the injury and the unfairly traded imports are identical for subsidy and dumping investigations and are outlined in a common statutory provision—19 U.S.C. § 1677(7). The 1984 Act added to this statute subsection (C)(iv), which broadly states that "the Commission shall cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry."

While mere placement of the cumulation directive in a statutory provision applicable to both antidumping and countervailing duty cases does not in and of itself suggest or require aggregation of dumped and subsidized imports, the language of subsection (C)(iv) requires the cumulation of products "subject to investigation." There is absolutely no indication that cumulation is to be limited to products subject only to antidumping duty investigations or to products subject only to countervailing duty investigations. Again, "[t]he primary concern of

---

**4.** Prior to the 1984 Act, the Commission had found the cumulation methodology appropriate in certain investigations under the Antidumping Act of 1921 and the Trade Agreements Act of 1979. *See e.g., Portland Gray Cement from Portugal,* T.C. Public. 37, Investigation. No. AA1921–22, (1961); *Pig Iron from East Germany, Czechoslovakia, Romania, and the U.S.S.R.,* T.C. Public. 265, Investigation Nos. AA1921–52–55, (1968); *Aminoacetic Acid (Glycine) from France,* T.C. Public. 313, Investigation Nos. AA1921–61, (1970); *Certain Carbon Steel Products from Belgium, The Federal Republic of Germany, France, Italy, Luxembourg, The Netherlands, and The United Kingdom,* U.S.I.T.C. Public. 1064, Investigation Nos. 731–TA–18–24 (Preliminary) (1980). The Commission had not, however, *cross-cumulated* prior to the 1984 Act. U.S.I.T.C. Public. 1720, at 12.

Cumulation was first judicially approved in *City Lumber Co. v. United States,* 64 Cust.Ct. 826, A.R.D. 269, 311 F.Supp. 340 (1970), *aff'd,* 59 CCPA 89, C.A.D. 1045, 457 F.2d 991 (1972). Still, Congress explicitly recognized in 1974 that cumulation was not required "as a matter of law," but could be applied by the Commission on a case by case basis. S.Rep. No. 1298, 93d Cong., 2d Sess. 180 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7186, 7317. It was only after a long period of administrative discretion in applying cumulation that Congress finally made the methodology mandatory in the 1984 Act.

For a rendition of the legislative process leading to the enactment of section 1677(7)(C)(iv) and the refusal of the House conferees to yield on the stringent cumulation requirement, as they had done in agreeing to agency discretion respecting other provisions, see Bello & Holmer, *The Trade and Tariff Act of 1984: Principal Antidumping and Countervailing Duty Provisions,* 19 Int'l Law. 639, 661 & nn. 74–78 (1985).

the law is with the effect on domestic industry." *American Grape Growers Alliance for Fair Trade v. United States,* 9 CIT —, 615 F.Supp. 603, 606, *appeal docketed,* No. 85–2717 (Fed.Cir. Aug. 28, 1985) (cumulation required where like products compete with each other only to same degree as with like products of domestic industry under pre–1984 Act law). In light of Congress's expressed concern with the combined effects of all unfairly traded imports upon domestic industries, the Court must inexorably conclude that section 1677(7)(C)(iv) is intended to require the cumulation of all competing like products subject to investigation, whether the investigations cover dumped or subsidized imports, or both.

The Court is mindful of the policy of encouraging countries to sign the Subsidies Code, *see* S.Rep. No. 249, at 44–45, U.S. Code Cong. & Admin.News, 1979, pp. 430, 431, which underlays the requirement of an injury determination in subsidy investigations. Although countries "under the Agreement" providing subsidies leading to only *de minimis* injury may be penalized because of dumped merchandise over which they have no control, the concern is no different in multiple subsidy investigations where each country has no control over subsidization by other countries, and where cumulation is concededly mandatory. In enacting the countervailing and antidumping duty laws, Congress balanced many interests. But with the 1984 cumulation provision, Congress clearly tipped the scale in favor of the domestic industry and against any country engaging in unfair trade practices.

Defendant contends that the application of cross-cumulation would lead to anomalous results, referring to various distinctions between the antidumping and countervailing duty provisions respecting certain special findings and considerations in injury investigations. *Compare* 19 U.S.C. § 1671d(b)(4) *with* 19 U.S.C. § 1673d(b)4

(additional findings required upon an affirmative finding of critical circumstances); *see also* 19 U.S.C. § 1677(7)(E) and (F)(i) (consideration of nature of subsidy in determination of threat of material injury). Cumulation, however, is required only for the purpose of evaluating volume and price effects under 19 U.S.C. § 1677(7)(C)(i) and (ii). Plainly, cross-cumulation does not preclude the Commission from properly making certain findings or considering information as required by these other statutory provisions.

Defendant's argument, based on a literal reading of statutory provisions *other* than the cumulation provision (i.e., 19 U.S.C. §§ 1671(a), 1671d(b), 1673 and 1673d(b)), stems from a perceived requirement of a causal nexus between dumped or subsidized imports, not a combination of both, and the injury to the domestic industry.[5] A literal reading of these provisions, however, would equally prohibit the cumulation of imports subject to two or more investigations of the same unfair trade practice. If 19 U.S.C. §§ 1671d(b) and 1673d(b), for example, were read to mean that the Commission's final determination must be of injury "by reason of imports of the merchandise" found by the International Trade Administration to be subsidized (or dumped), it would follow that cumulation of the injurious effects of imports covered by separate investigations would always be prohibited because the Commission must limit its causal nexus analysis to the merchandise which is subject to the particular dumping or subsidy investigation. To the extent that the other statutory provisions cited by defendant are *in pari materia* with the cumulation provision, they must be harmonized with the clear congressional purpose in broadly mandating cumulation. *See United States v. Invicta Seeland, Inc.,* 25 CCPA 300, 305–06, T.D. 49397 (1938).

Defendant has not pointed to one policy reason why the cumulative injurious ef-

---

**5.** The extent of the relevant cause of injury is itself a highly controversial issue and not settled in the law. *See generally,* Victor, *Injury Determinations by the International Trade Commis-* *sion in Antidumping and CVD Proceedings* in the Trade Agreements Act of 1979—Four Years Later 117, 147–54 (1983).

fects of imports in multiple subsidy investigations or multiple dumping investigations should be treated differently from the cumulative injurious effects of imports in concurrent subsidy and dumping investigations. Defendant's interpretation of the law in essence urges this Court to tolerate an obvious loophole in the cumulation directive for no apparent justification. As discussed, congressional intent to protect domestic industry from the compounded effects of unfairly traded imports from two or more countries requires no more than that the injury be caused by imports of competing like products from countries under investigation.[6]

The criteria that the Commission is required to consider in subsections (C)(i) and (ii) applies to both preliminary and final determinations. *See* 19 U.S.C. § 1677(7)(B). The Court accordingly holds that the Commission's refusal in its preliminary determination to cumulate the volume and effect of imports of the merchandise subject to both the countervailing and antidumping duty investigations is not in accordance with law. This case must therefore be remanded to the International Trade Commission for further consideration and redetermination consistent with this opinion.

Plaintiffs also challenge the Commission's interpretation and application of the "reasonable indication" standard of 19 U.S.C. § 1673b(a) (1982) in making its preliminary determination, citing *American Lamb Co. v. United States*, 9 CIT ——, 611 F.Supp. 979, remanded, 785 F.2d 994 (Fed. Cir.1985); *Jeannette Sheet Glass Corp. v. United States*, 9 CIT ——, 607 F.Supp. 123, *appeal docketed*, No. 86–519 (Fed.Cir. Octo-

ber 4, 1985); *Republic Steel Corp. v. United States*, 8 CIT ——, 591 F.Supp. 640 (1984), *reh'g* denied, 9 CIT ——, Slip.Op. 85–27 (March 11, 1985). As it may ultimately be unnecessary to reach the issue of "reasonable indication" in this case, the Court reserves decision on this question at this time.

## ORDER

Upon reading and filing plaintiffs' motion for review upon the agency record, defendant's response thereto, upon all other papers and proceedings had herein, and upon due deliberation, it is hereby

ORDERED, ADJUDGED and DE-CREED that:

the case is remanded to the International Trade Commission for redetermination;

the Commission shall cumulate the volume and price effects of the Brazilian light construction castings subject to the countervailing duty investigation with those of the light construction castings subject to the parallel antidumping duty investigations as required by 19 U.S.C. § 1677(7)(C)(iv); and

the International Trade Commission shall report its redetermination made consistent with the foregoing opinion to this Court within 45 days after the date of entry of this order.

---

**6.** An additional requirement for cumulation, clear from the legislative history, is that the marketing of unfairly traded imports be "reasonably coincident." H.R.Rep. No. 725, at 37, U.S.Code Cong. & Admin.News 1984, p. 5164; *see also* Price, *The Trade and Tariff Act of 1984: An Analytical Overview*, 19 Int'l Law. 321, 335 (1985) (predicating cumulation on three conditions); *cf. Certain Carbon Steel Products from Austria, Poland, Romania, Sweden and Venezue-*

*la,* U.S.I.T.C. Public. 1642, at 48–50, Investigation Nos. 701–TA–225–234 and 731–TA–213–217, 219, 221–26, and 228–35 (Preliminary) (1985) (views of Vice Chairman Liebeler) (cumulation limited to imports from countries that are *currently* the subject of an investigation). This issue is not before the Court in the present case since the countervailing duty investigation exactly paralleled the antidumping investigations.