**BINGHAM & TAYLOR DIVISION, VIRGINIA INDUSTRIES, INC., et al., Appellees,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 86–1440.**

United States Court of Appeals, Federal Circuit.

March 31, 1987.

John C. Kingery, Office of the General Counsel, United States International Trade Commission, Washington, D.C., argued for appellant. With him on the brief were Lyn M. Schlitt, General Counsel and Michael P. Mabile, Assistant General Counsel, Washington, D.C.

Paul C. Rosenthal, Collier, Shannon, Rill & Scott, Washington, D.C., argued, for appellees. With him on the brief, was Kathleen Weaver Cannon, Washington, D.C.

Barton C. Green, General Counsel and Secretary, American Iron and Steel Institute, Washington, D.C., was on the brief, for amicus curiae American Iron and Steel Institute.

Before DAVIS, SMITH and NEWMAN, Circuit Judges.

DAVIS, Circuit Judge.

We are called upon to review a decision of the United States Court of International Trade, *Bingham & Taylor Division, Virginia Industries v. United States*, 627 F.Supp. 793 (Ct. Int'l Trade 1986) (Carman, J.), holding that § 771(7)(C)(iv) of the Tariff Act of 1930, as amended (19 U.S.C. § 1677(7)(C)(iv) (1984)), requires the International Trade Commission (Commission) to assess cumulatively, for purposes of making its preliminary injury determinations, the volume and price effects of imports subject to an antidumping investigation together with imports of like products subject to a countervailing duty investigation. We affirm.

On May 13, 1985, the Commission and the Department of Commerce received a spate of unfair trade petitions filed by the Municipal Castings Fair Trade Council and its individual member companies. Five separate investigations ensued, four of which involved allegations of material injury to the domestic iron construction casting industries by reason of sales at less than fair value (LTFV) of light and heavy construction castings imported from India, Canada, the People's Republic of China and Brazil.[1] The fifth investigation focussed on whether imports of subsidized iron construction castings from Brazil were causing material injury to domestic industries manufacturing heavy and light iron construction castings.[2]

On July 3, 1985, the Commission published its preliminary determinations in all five investigations. With respect to the four antidumping investigations, the Commission concluded that there was a reasonable indication of material injury to the domestic light and heavy iron construction casting industries by reason of LTFV sales of imports from India, Canada, the People's Republic of China and Brazil. Similarly, the Commission announced an affirmative preliminary determination regarding imports of allegedly subsidized heavy iron construction castings from Brazil. However, the Commission found no reasonable indication of material injury to the domestic industry from imports of allegedly subsidized light iron construction castings from Brazil.[3]

The Commission arrived at its affirmative injury determinations in the antidump-

---

1. These were antidumping investigations.

2. This was a countervailing duty investigation.

3. The general course of the Commission's injury determinations is summarized in Mock, *Cumulation of Import Statistics in Injury Investigations before the International Trade Commission,* 7 Nw.J.Int.Law & Bus. 433, 434–39 (1986).

ing investigations by cumulating[4] the impact on the domestic industry of imports from the four countries involved. But in reaching its preliminary determinations in the countervailing duty investigation the Commission refused to cumulate the impact of imports subject to the antidumping investigations together with the impact of imports subject to the countervailing duty investigation. This refusal to cross-cumulate led the Commission to different preliminary injury determinations for light iron construction castings from Brazil. In its antidumping investigation, the Commission decided that there was a reasonable indication that these imports were causing material injury to the domestic industry. On the other hand, after examining the identical imports in the context of a countervailing duty investigation, the Commission found no reasonable indication of material injury.

The Court of International Trade remanded the case to the Commission for redetermination in light of the court's conclusion that "section 1677(7)(C)(iv), without exception, requires the cumulation of imports from two or more countries of like products 'subject to investigation' that compete with one another and with the domestic like product, regardless of whether the investigations relate to dumping, subsidies, or both." *Bingham & Taylor*, 627 F.Supp. at 795.[5] According to the Commission (which represents the appellant), the court misinterpreted the statute and legislative history by reading the cumulation provision to mandate cross-cumulation.

Our resolution of this issue necessarily begins with the language of the statutory clause. Section 771(7)(C)(iv) of the Tariff Act of 1930, as amended, provides:

(iv) Cumulation.—For purposes of clauses (i) [volume] and (ii) [price], the Commission shall cumulatively assess the volume and effect of imports from two or more countries of like products subject to investigation if such imports compete with each other and with like products of the domestic industry in the United States market.

19 U.S.C. § 1677(7)(C)(iv) (1984) (1984 Act). Appellees argue that the plain language requires the Commission to cumulate whenever two conditions are met: (1) the imports are subject to investigation; and (2) the imports compete with one another and with like products in the domestic industry. Conversely, the Commission contends that the statute admits of two contrary interpretations, both reasonable, one requiring and the other prohibiting cross-cumulation. In the Commission's view, because both constructions of the statute are reasonable, the court erred in failing to defer to the Commission's interpretation.

Our review of the provision's language on its face does not lead us irresistably to conclude that cross-cumulation is mandatory. A literal parsing discloses a possible ambiguity (even though the reading given by the Court of International Trade may seem the more natural one). In terms, the cumulation provision states that "the Commission shall cumulat[e] ... imports ... of like products *subject to investigation.*"[6] 19 U.S.C. § 1677(7)(C)(iv) (1984) (emphasis added). This wording does not definitively reveal whether Congress intended to require the cumulation of all competing like products subject to investigation, irrespective of whether the investigations covered dumped imports or subsidized imports or both.

---

**4.** Cumulation involves aggregating volume and price data with respect to imports from two or more countries for purposes of the Commission's material injury determination. The aggregation of allegedly dumped and allegedly subsidized imports from two or more countries for purposes of volume and price analysis has been called "cross-cumulation."

**5.** After remand and redetermination of injury, the final order was entered by the Court of

International Trade on June 3, 1986, and this appeal followed.

**6.** It is not disputed that the subject imports in this case "compete with each other and with like products of the domestic industry in the United States market." No question is raised on this appeal with respect to those criteria. Nor is there any issue as to the cumulation of dumping injuries.

Because the statutory language is unclear on its face, we must reach beyond the bare words for the meaning of the provision. A review of the Commission's past experience with respect to cumulation is instructive. Cumulation originated as an administrative practice. Prior to the 1984 Act, the Commission's cumulation practice was characterized by internal inconsistency and confusion. Without the benefit of a cumulation statute or legislative history, the Commission in effect left the decision whether to cumulate to the discretion of the individual commissioners.[7] Thus, while some commissioners tended to aggregate dumped and subsidized imports in their cumulation analyses,[8] others did not.[9] The Commission as an entity never cross-cumulated.

Congress responded to these variations by enacting as part of the Trade and Tariff Act of 1984 a new subsection 771(7)(C)(iv) which mandates cumulation in certain circumstances. Although the legislative history of this measure is scant, what does exist supports this court's conclusion that the statute mandates cross-cumulation (at least normally). That Congress sought to inject uniformity into the haphazard application of cumulation is evident from a House Ways and Means Committee report:

> The purpose of mandating cumulation under appropriate circumstances is to eliminate inconsistencies in Commission practice and to ensure that the injury test adequately addresses *simultaneous unfair imports from different countries.* Most Commissioners have applied cumulation under certain circumstances but have articulated a variety of differing criteria and conditions. However, cumulation is not required by statute. In addition, a few Commissioners have imposed conditions which do not seem justified to the Committee.

> The Committee believes that the practice of cumulation is based on the *sound principle of preventing material injury which comes about by virtue of several unfair acts or practices* (emphasis added).

H.R.Rep. No. 725, 98th Cong., 2d Sess. at 37, *reprinted in* 1984 U.S.Code Cong. & Admin.News 4910, 5127, 5164. Although not decisive, the intent of the legislature as revealed by a committee report is highly persuasive. *See generally Bindczyck v. Finucane,* 342 U.S. 76, 80, 72 S.Ct. 130, 132, 96 L.Ed. 100 (1951); *Eichenlaub v. Shaugnessy,* 338 U.S. 521, 532, 70 S.Ct. 329, 334, 64 L.Ed. 307, 94 L.Ed. 307 (1950); *see also Housing Authority of the City of Omaha, Nebraska v. United States Housing Authority,* 468 F.2d 1, 7 n. 7 (8th Cir.1972) ("committee reports represent the most persuasive indicia of Congressional intent"). This is especially true where, as here, there apparently were no dissenting views on the cumulation issue. And because we find that the statutory language suffers from some ambiguity, the relevant legislative history assumes an even greater role in interpretation. *See, e.g., Texas State Comm'n for the Blind v. United States,* 796 F.2d 400, 415 (Fed.Cir.1986) (Davis, J. concurring) ("the less compelling and definite the language, the more controlling the history to the extent of its strength").

In eliminating the Commission's discretion with respect to cumulation, the 1984 Act directs cumulation whenever the statutory criteria are met. Moreover, the Committee's use of generic terms collectively describing dumped and subsidized imports in the committee report quoted above sug-

---

**7.** Although in 1970 the judiciary recognized the Commission's discretionary power to cumulate, *City Lumber Co. v. United States,* 311 F.Supp. 340 (Cust.Ct.1970), *aff'd,* 457 F.2d 991 (C.C.P.A. 1972), in *Republic Steel Corp. v. United States,* 591 F.Supp. 640 (Ct. Int'l Trade 1984), the Court of International Trade imposed limits on the Commission's discretion. The court held that, in the circumstances of that case, cumulation was mandatory, not discretionary.

**8.** Carbon Steel Wire Rod from Brazil, Belgium, France and Venezuela, USITC Pub. 1230 at 33 (1982) (views of Commissioner Frank); *see also id.* at 19–20 (views of Commissioner Calhoun).

**9.** Stainless Steel Sheet and Strip from the Federal Republic of Germany and France and Stainless Steel Sheet, Strip and Plate from the United Kingdom, USITC Pub. 1391 at 9 n. 2. (1983) (views of Commissioner Stern).

gests that the statutory phrase "subject to investigation" was intended to require cumulation of dumped and subsidized imports. According to the report, Congress' dual purpose for adopting the cumulation provision was "to eliminate the inconsistencies in the Commission practice and to ensure that the injury test adequately addresses simultaneous *unfair imports* from different countries." Cumulation was viewed as a tool for "preventing material injury which comes about by virtue of several *unfair acts or practices*." H.R.Rep. No. 725, 98th Cong., 2d Sess. 37 (1984) (emphasis added), 1984 U.S.Code Cong. & Admin.News p. 5164. Obviously, whether imports are dumped, subsidized, or both does not alter their status as unfair imports. Further, as the Court of International Trade noted, it is significant that "Congress did not make any exclusion or exception for cross-cumulation in the 1984 statute, but rather elected to mandate cumulation in broad terms." *Bingham & Taylor*, 627 F.Supp. at 797.

Nor can it be argued that Congress was unaware of the potential for cross-cumulation when it drafted the 1984 Act. During hearings before the House Ways and Means Subcommittee on Trade, Adolph J. Lena testified:

> The law now permits the International Trade Commission to combine or "cumulate" imports from different countries when making injury determinations in antidumping and countervailing duty investigations. Cumulation makes sense; death by one or one hundred blows is equally fatal. The ITC, however, has been hesitant to cumulate imports at all and extremely reluctant to do so in preliminary injury determinations. *There also has been some question about cumulation of imports of the same product in separate countervailing duty and antidumping cases.* We believe that it would be helpful to amend the

statute to require cumulation in certain circumstances. Such an amendment would help to ensure that domestic industries are not denied relief because of an unwise exercise of discretion by the Commission.

Options to Improve the Trade Remedy Laws: Hearings Before the Subcomm. on Trade of the Comm. on Ways and Means, 98th Cong., 1st Sess. 197, 203 (1983) (emphasis added). The matter was thus squarely presented to Congress.[10]

Another indication that the statute ordinarily demands cross-cumulation is that cross-cumulation fully harmonizes with the pattern of the antidumping and subsidization aspects of the legislation. Appellant points out that there are separate statutory provisions for determination of a reasonable indication of injury in antidumping and countervailing investigations, inferring from the distinctive provisions that Congress wanted the two types of unfair trade practices to be kept entirely separate. We do not agree with that conclusion; on the contrary, the statute suggests the contrary with respect to cumulation. First, when Congress added the cumulation provision in 1984 it did not include that matter in the specific sections applicable to subsidy and dumping investigations but instead placed it in the general part of the statute that applies to both types of unfair trade proceedings. 19 U.S.C. § 1677 ("Definitions; special rules"). Second, the material injury provisions applicable to the two types of proceedings are substantially the same, thus showing the complementary nature of both determinations. Third, in the same statute that added cumulation Congress also provided a method for facilitating the holding of simultaneous antidumping and subsidy investigations and proceedings with respect to the same merchandise. 19 U.S.C. § 1671d(a)(1). This obviously makes cross-cumulation much easier.[11]

---

10. At the same hearings the then Chairman of the Commission acknowledged that there was a significant debate on the issue of cross-cumulation. *Options to Improve the Trade Laws, supra,* at 16, 21.

11. Cross-cumulation does not interfere with the requirement that injury be "by reason of imports of the merchandise" found to have been imported unfairly. *See Bingham & Taylor,* 627 F.Supp. at 798.

The sum of it is that (a) Congress used statutory words which, in and of themselves, fully authorize cross-cumulation (at the very least); (b) the legislative history shows, further, that Congress wanted both to establish a general, uniform rule to end the Commission's prior variations and also to cover the broad category of "simultaneous unfair imports from different countries," a phrase plainly blanketing both types of unfair trade practices; and (c) the statute as a whole fits well with cross-cumulation.

This being so, for the courts to engraft onto the statute a prohibition against cross-cumulation, where Congress itself has not done so, would be improper. We therefore agree with the Court of International Trade's holding that 19 U.S.C. § 1677(7)(C)(iv) mandates the cumulation of subsidized light iron construction castings from Brazil with dumped light iron construction castings from India, Canada, and the People's Republic of China. Particularly revealing of the need for that decision is the important fact that the Brazilian imports under investigation in the antidumping proceedings are identical to those under investigation in the countervailing duty proceedings. That is, all imports from Brazil subject to investigation were both dumped and subsidized. As appellees point out, a finding of material injury with respect to dumped imports from Brazil but not subsidized imports from Brazil would indeed be bizarre where (1) the Brazilian imports at issue in both investigations are identical; and (2) the injury determinations for dumping and subsidy investigations are themselves identical. The same imports subjected to the same tests should naturally yield the same results. A contrary reading of the statute would lead to absurd and mischievous results and thwart Congress' purpose.[12]

Appellant's contention that the Court of International Trade erred in not deferring to the Commission's interpretation of the cumulation provision cannot be accepted. The general rule is that an interpretation by the agency charged with the administration of the statute is entitled to great weight where the interpretation is both consistent and longstanding. *United States v. National Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 719, 95 S.Ct. 2427, 2442, 45 L.Ed.2d 486 (1975). This case, however, involves the Commission's initial interpretation, in its preliminary determination of July 3, 1985, of a statute enacted barely eight months earlier on October 30, 1984. The record discloses no consistent interpretation or longstanding practice by the Commission barring the cumulation of dumped with subsidized imports under the new law.[13]

Moreover, this is an instance in which the Commission's interpretation, though almost contemporaneous with the statute's passage, runs counter to the objective of the cumulation provision as revealed in its legislative history and also leads to incongruous results Congress could not have intended. That type of agency interpretation need not be followed. *Al Tech Specialty Steel Corp. v. United States*, 745 F.2d 632, 642 (Fed.Cir.1984).

AFFIRMED.

---

12. We leave open the question of cross-cumulation where that practice would clearly lead to a violation of this country's international obligations. Here, the Commission has made no such determination.

13. We note in passing that there are strong indications that Congress does not acquiesce in the Commission's refusal to cross-cumulate under the 1984 Act. In its proposed Comprehensive Trade Policy Reform Act of 1986, the House of Representatives included a provision specifically requiring the cumulation of dumped imports with subsidized imports. According to the accompanying report by the House Ways and Means Committee, that bill *"merely clarifies the Committee's original intent in mandating cumulation in [the] 1984 [Act].* Since passage of that Act, questions have arisen during the course of Commission investigations as to whether cumulation of dumped and subsidized imports which compete with one another is required. The Committee believes that cumulation of all unfairly traded imports which are competing at the same time in the U.S. market is appropriate." H.R.Rep. No. 581, 98th Cong., 2d Sess., Part 1 at 88–89 (1984) (emphasis added).